UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
KALAMAZOO DIVISION

RICHARD E. CORNS,

    Plaintiff,

v.                                                  Case No. 06-CV-0150
                                                  The Honorable Janet T. Neff

GRAND TRUNK WESTERN
RAILROAD, INC.,                       **ORAL ARGUMENT**
                                                    **REQUESTED**

    Defendant.

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

    Plaintiff respectfully submits that Defendant's Motion For Summary Judgment must be denied based upon the following statement of facts and argument:

### SUMMARY OF REASONS WHY DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SHOULD BE DENIED

    Defendant's Motion For Summary Judgment should be denied because there is a genuine issue of material fact as to each element necessary to prove a cause of action under The Federal Employer's Liability Act (FELA ).  First, Defendant's argument that Plaintiff was not within the scope of his employment when he sustained injuries in an automobile collision while commuting from his work place misses the point because this is not a simple commuter case.  This is a case where Defendant has caused Plaintiff's fatigue and sleep deprivation and the accident that occurred while Plaintiff was driving home is the manifestation of that fatigue and sleep deprivation.

    Second, even if this case is analyzed under the commuter standards, Defendant's claim that the injury did not occur "within the scope" of employment since Plaintiff's collision occurred when he was driving home from the railroad yard ignores certain facts, which preclude stating as

1

a matter of law that Plaintiff's injuries sustained in an accident while commuting to and from work did not occur within the scope of his employment under FELA. Those facts supporting coverage under FELA are that Plaintiff was an employee on call virtually all of the time, who could not refuse to come in if called, even if he had just completed a shift and that Plaintiff was compensated for travelling to and from work.

## STATEMENT OF FACTS

Defendant's Statement of Facts is extensive and contains many facts irrelevant to its Motion For Summary Judgment including Plaintiff's past work history. For purposes of this summary judgment motion the only facts relevant to disposition are those that pertain to whether Plaintiff was injured within the scope of his employment and on this issue Defendant omits several critical facts. Defendant does not contest the issue of negligence in this motion.

Defendant sets out Plaintiff's work schedule for the three days preceding January 4, 2004, the date of the accident, which Plaintiff does not dispute. Plaintiff testified in deposition that he worked sixteen hours straight from 11:00 p.m. on January 3rd to 3:00 p.m. on January 4, 2004. (Dep. Corns pp.98-103). Defendant's description of what transpired prior to Plaintiff's leaving the yard office and the fact that when Plaintiff left, he was driving home are also not in dispute. (P. 6 of Defendant's Memorandum)

It is further undisputed that the automobile accident occurred approximately 22 miles south of Lansing on Interstate 69, that Plaintiff called his boss, Paul Longford after the accident (Dep. Corns p.133 ) and that Defendant employee Bill Galovich met Plaintiff at a gas station where Plaintiff's car was taken and drove Plaintiff home. (Dep. Corns, pp.138-139)

The relevant facts omitted by Defendant are as follows:

      1.    When Plaintiff switched job positions to working the spare board, it meant he could not refuse to work when Defendant called and there

      were no restrictions on his being called in to work other than the one day off he had, which was Tuesdays. (Dep. Corns pp.93-94)

2. On January 2, 2004 he was called at approximately 5 a.m. to work the 7 to 3 shift and after getting home around 4 p.m. he was called around 9pm to work the Lansing 11 p.m. to 7 a.m. shift. He told the dispatcher he had been up for over 24 hours and asked if they could find someone else and he was told no. (Dep. Corns pp. 99-101)

3. It was not unusual for Plaintiff to call his boss Paul from his cell phone or call the trainmaster on duty while driving. (Dep. Corns p.113)

4. Plaintiff was paid mileage money for driving his car to and from work (Dep. Corns p. 142, 148)

5. Plaintiff did not consider himself off duty when driving home because being on the Spare Board meant he was available all the time, 6 days a week, 24 hours a day. (Dep. Corns p.145) He stated in deposition that "just because you walk out the door doesn't mean you are done with the railroad." (Dep. Corns. p. 149)

6. Plaintiff did not know if he could be made to work a triple shift (under the collective bargaining agreement) but he had worked 3 shifts in a row more than once, and a 32 hour straight shift didn't violate the agreement as far as he knew. (Dep. Corns pp.145-148)

7. On the day of the accident, at approximately 2 p.m. Plaintiff called his boss and told him he wasn't feeling good. His boss told him he could leave once the coal train left. Plaintiff had started feeling sick about 8 hours before calling his boss. (Dep. Corns pp. 107-108)

8. Plaintiff fell asleep at the wheel and collided with another vehicle as a result of his sleep deprivation and fatigue. (Complaint ¶ 9)

9. Plaintiff stated he called his boss (after the accident) because he thought he was supposed to report the accident. (Dep. Corns p.144)

The other issue raised by Defendant concerns the applicability of The Hours of Service Laws. Although Defendant also claims there is no violation of this law, it cites no evidence or argument in support of that claim. Its argument is a legal argument, which does not depend on any particular factual evidence.

## LEGAL ANALYSIS

The factual evidence establishes that Plaintiff was fatigued because Defendant had required him to work sixteen straight hours prior to the accident, that Defendant had not had sufficient sleep due to the schedule he had worked the prior three days, that Defendant knew Plaintiff was fatigued and finally the fatigue caused by Defendant's negligence was manifested when Plaintiff drove home and fell asleep at the wheel resulting in an accident with another vehicle.  The facts further showed that Plaintiff's job was not simply a shift job with specific hours.  He was on call all of the time with the exception of Tuesdays.  During his normal commute, he frequently conversed with his employer and he was compensated for mileage between home and the yard. This evidence defeats Defendant's Motion For Summary Judgment based on an "outside the scope of employment" argument because at the very least it evidences a dispute over an issue of material fact.

With respect to Defendant's second claim for summary judgment, concerning the violations of the Hours Of Service Laws alleged in the Complaint, Plaintiff is not claiming a separate cause of action under this law.  Instead, the violations alleged provide evidentiary support for Plaintiff's claims that Defendant was negligent in causing his extreme fatigue and sleep deprivation.

## STANDARD OF REVIEW

Summary judgment is only proper when the record demonstrates "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999)

A trial judge must submit a FELA case to the jury when there is even slight evidence of negligence. *Id.* "The test is simply whether the evidence justifies with reason the conclusion that

employer negligence played any part, even the slightest, in producing the employee's injury."

*Rogers v. Missouri Pac. R. Co.,* 352 U.S. 500, 506, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957)

**I.       Defendant Is Not Entitled to Summary Judgment On Plaintiff's FELA Cause Of Action Because There Are Genuine Issues of Material Fact On All Requisite Elements Of Plaintiff's Claims.**

   **A.       Plaintiff's Accident In Which He Sustained Injuries Was Caused By Fatigue And Sleep Deprivation, Which In Turn Was Caused By Defendant's Negligence.**

Courts must construe FELA provisions liberally in favor of injured workers *Consolidated Rail Corp v. Gottshall*, 512 U.S. 532, 542, 114 S.Ct. 2396, 129 L.E.d2d 427 (1994). "Under FELA, a railroad's duty to its employees is broader than the duty of reasonable care imposed by common law." *Id.* at 43. The court, citing *Green v. River Terminal Ry. Co.*, 763 F.2d 805, 808 (6th Cir. 1985), recognized that under the FELA, the plaintiff had to prove he was injured while in the scope of his employment; that his employment was in furtherance of the railroad's interstate transportation business; that the railroad, his employer, was negligent; and the railroad's negligence played some part in causing the injury for which damages were sought. *Burrus v. Norfolk and Western Ry. Co.*, 977 S.W.2d 39 (Mo. App. E.D. 1998). On the question of foreseeability, a "plaintiff only needed to show his injuries were a natural and probable consequence of railroad's negligence, and not 'that the particular collision and injury to plaintiff could have reasonably been anticipated.'" *Id*. *citations omitted.*

In this case, Plaintiff has presented evidence on each element of his FELA claim. The Complaint alleges the duty to provide him with a reasonably safe place in which to work. The Complaint also alleges Defendant breached that duty by forcing Plaintiff to put in excessive hours that were in violation of the Hours of Service Laws, which was negligent. As a result of this act, Plaintiff suffered from severe sleep deprivation and fatigue. Finally the Complaint

5

alleges the fatigue was manifested when he was driving home and fell asleep and collided with another vehicle. (Complaint)

Defendant has not refuted any of these allegations with counter-evidence. All Defendant's motion claims is that the accident occurred when he was off duty and off the Defendant's premises. This argument ignores the fact that sleep deprivation and fatigue occurred on the premises during Plaintiff's work shift, and Defendant did nothing to prevent or alleviate it. The manifestation of this fatigue and sleep deprivation occurred later, but it certainly was foreseeable, and Defendant does not challenge the issue of foreseeability.

Defendant attempts to place the facts within the commuter rule analysis. However, this case is much more like a case where an injury does not manifest itself immediately. So long as the causation element is established, as it is here, the case satisfies the criteria for surviving summary judgment. The trial court should only withdraw the issues from a jury's consideration "in those extremely rare instances where there is zero proof either of employer negligence or that any such negligence contributed to injury of an employee. *Hines v. Consol. Rail Corp.*, 926 F.2d 262 (3rd Cir. 1991)

> **B.     If This Is Viewed Under The Commuter Case Analysis, Summary Judgment Is Improper Because Plaintiff Was Compensated For Travel And Was An On Call Employee.**

Defendant's argument that Plaintiff was commuting from work and therefore his injury occurred outside the scope of his employment rests entirely on a rule that a worker commuting to or from work is not ordinarily deemed to be within the scope of his employment. See *Getty v. Boston & Maine Corp.*, 505 F.2d 1226 (1st Cir. 1974) and other cases cited by Defendant in its Memorandum In Support of Summary Judgment, pp. 12-13.

Aside from the fact that in each of these cases, the plaintiff's injury on the commute is

totally unrelated to anything that had occurred while he was on duty, Defendant fails to acknowledge the more recent trend, which is to evaluate each case on its own facts and not set out a general rule. See *Ponce v. Northeast Illinois Regional Commuter Railroad Corp.*, 103 F.Supp.2d 1051, 1058 (N.D.Ill. 2000) citing *Caillouette v. Balt. & Ohio Chicago Terminal R. Co.*, 705 F.2d 243 (7th Cir. 1983)

The "scope of employment at the time of the incident" issue is usually one that must be resolved by a jury. *Goldwater v. Metro-North Commuter Railroad,* 101 F.3d 296, 298 (2d Cir. 1996); *Kelly v. Metro-North Commuter Railroad*, 37 F.Supp.2d 233, 237 (S.D.N.Y. 1999) Unless "reasonable minds cannot differ on the effect of the evidence and its inferences does the issue become one of law." *Turpin v. Chicago, Burlington & Quincy R.R. Co.*, 403 S.W.2d 233 (Mo. 1966) *cert. denied*, 384 U.S. 1003 (1966).

The commuter rule was generally applied when a person is injured while riding on one of defendant's trains while off duty.  There have been certain recognized exceptions to the commuter rule. Two of these are when the employee is compensated for the time traveling, *Griffith v. Gardner*, 358 Mo. 859, 217 S.W.2d 519 (1949) and when the employee is on call at all times and traveling on the employer's train aids in his availability. *Parker v. Long Island Rail Road*, 425 F.2d 1013, 1015 (2d Cir. 1970)  By analogy, the case at bar falls within these exceptions.  The Plaintiff testified he received mileage compensation for his travel time and also discussed his job in terms that placed him on call all of the time.

In *Parker,* the employee was on call, available day or night, in case of emergency.   His on-call status meant he was on duty twenty four hours a day and thus was covered under FELA. This is similar to the concepts of "in service of the vessel" and "answerable to the call of duty," applied in maritime seaman claims.  Whether a seaman is "answerable to the call of duty"

7

"depends on the particular facts and circumstances of each case." *Baker v. Ocean Systems, Inc.*, 454 F.2d 379, 384 (5th Cir. 1972)  Plaintiff is not claiming that all railroad employees are to be treated as seaman.  However, when the employment position is analogous to that of a seaman, the same legal analysis should be applied to resolve the question of "within the scope of employment."

Plaintiff was on call 24 hours a day with the exceptions of Tuesdays.  The collision did not occur on Tuesday, so Plaintiff was on duty at the time of the collision. At a minimum, this raises issues of material fact on the issue of whether plaintiff was within the scope of his employment.

## II.     Plaintiff's Allegations of Violations of The Hours Of Service Laws Do Not Allege A Separate Cause Of Action. They Constitute Evidence Of Negligence.

Defendant has misinterpreted Plaintiff's allegations regarding the Hours of Service Laws' violations contained in Plaintiff's complaint. Plaintiff is not claiming a private right of action here.  He is citing these violations as evidence of negligence in his FELA claim. Just as violations of safety regulations eliminate the need to establish duty and breach of duty, the violations of The Hours Of Service Laws likewise eliminate proof on those two elements. *Moody v. Boston And Maine Corp.*, 921 F.2d 1 (1st Cir. 1990)

The remainder of Defendant's argument under this point simply goes back to Point I, which has been analyzed and refuted by Plaintiff in this Memorandum.

## CONCLUSION

Based on the foregoing reasons, Defendant's Motion for Summary Judgment should be denied in all respects.

Respectfully submitted,

8

         THE BRENNAN LAW FIRM, P.C.


        By: /s/ Ryan Brennan
          Ryan Brennan
          19 Bronze Pointe
          Belleville, IL  62226
          Phone: (618) 236-2121
          Fax:    (618) 236-1282
          E-Mail:  kelder@peaknet.net

And

        Local Counsel:

        ARVIN J. PEARLMAN (P18743)
        PEARLMAN & PIANIN, P.L.L.C.
        24725 W. Twelve Mile Road
        Suite 220
        Southfield, Michigan 48034
        Phone: (248) 356-5000
        Fax: 248- 356-0001
        E-Mail:  apearlman@pearlpi.com


## **CERTIFICATE OF SERVICE**

The undersigned certifies that on March 6, 2008, the foregoing instrument was filed with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

RICHARD A. DIETZ (P31940)  rdietz@fostermeadows.com

ARVIN J. PEARLMAN (P18743)  apearlman@pearlpi.com

         /s/ Ryan Brennan